IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-229-BO

COUNTY OF YADKIN,

        Plaintiff,

v.

CAH ACQUISITIONS COMPANY 10 LLC, HMC/CAH CONSOLIDATED, INC., and RURAL COMMUNITY HOSPITALS OF AMERICA, LLC,

        Defendants.

**ORDER**

This cause comes before the Court for a determination of civil contempt sanctions following the Court's June 18, 2015, Order finding defendants in civil contempt. [DE 29].

## BACKGROUND

Rather than rehash the facts of this case yet again, the Court incorporates by reference the background set out in the June 19, 2015, Order. In that order, the Court found that defendants were in knowing violation of the temporary restraining order (TRO) entered by the Wake County Superior Court that enjoined defendants from closing the Yadkin Valley Community Hospital. The Court further found that defendants had not proffered sufficient justification for their non-compliance and that a finding of civil contempt was appropriate.

Because it was not possible for defendants to reopen the hospital to purge themselves of the contempt, the Court determined that civil contempt sanctions were necessary to compensate plaintiff for its losses. *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995). Accordingly, the Court instructed the County to provide the Court with proof of its damages, measured from

May 22, 2015, the time of the violation, to the time of reopening, but not to exceed July 31, 2015, the date that the contract between the County and defendants was set to expire.[1] The Court also found that the County was entitled to its reasonable attorneys' fees.

## DISCUSSION

This Court has broad discretion to craft civil contempt remedies. *See Gen. Motors Corp.*, 61 F.3d at 259. Any remedy "must be remedial and compensatory and, unlike criminal contempt, nonpunitive." *Id.* "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* The Court has already determined that damages from the date of breach through July 31, 2015, and attorneys' fees are appropriate and will not revisit its decision here, save to note that the defendants' violation of the TRO rendered further injunctive relief impossible and defendants may not insulate themselves from damages after the TRO expired.

*1. Losses*

Plaintiff must prove its losses by a preponderance of the evidence. *In re Gen. Motors Corp.*, 110 F.3d 1003, 1018 (4th Cir. 1997). Plaintiff argues that it sustained $79,940.11 in losses between May 22, 2015 and July 31, 2015. This included EMS services, utilities, maintenance, costs, employee time, and county attorney time. In support of its argument, plaintiff submitted a number of affidavits of Lisa Hughes, County Manager for Yadkin County. [DE 42–1, 63, 103]. Defendant argues that the losses and damages claimed require a merits determination and that the Court cannot impose sanctions beyond June 2, 2015. While the Court recognizes that some of the sanctions may overlap with the damages to which the County may be entitled at the close of litigation, that is not the dispositive inquiry. "With the compensatory sanction, the end result is

---

[1] The Court originally directed the County to attempt to reopen within 30 days of the June 19, 2015, order, but later clarified that the County had no mandate to reopen the hospital at any time. [DE 46].

2

largely the same as an action for damages . . . However, the justification for the sanction is different than that for the damage action." *Am. Airlines v. Allied Pilots Ass'n*, 228 F.3d 574, 585–95 (5th Cir. 2000). Irrespective of the merits, the County is entitled to recover the losses caused by defendants' disobedience of the TRO. And, as the Court noted above, it has already determined that compensation for the losses sustained through July 31, 2015, is appropriate. After reviewing the affidavits submitted, the Court finds that plaintiff has adequately proven its losses in the amount of $36,079.96. The Court uses as a basis for this figure the EMS employee costs for May 22 through June 26, 2015 ($15,890.49), the medical records, supplies, and postage ($798.96), the utilities ($423.88), the maintenance for the building ($13,071.56), the hospital consultation ($3,600), and the costs/mileage and fuel ($2,295.07).

The Court, however, declines to include as a sanction the unknown costs to the local citizens of Yadkin County, and the estimated costs for EMS employees from June 27 through July 31, 2015, finding that these are too speculative, as plaintiff has not submitted definitive statements of said losses. The Court also declines to include as a sanction the personnel expenses for employees performing tasks related to the sudden hospital closure or the county attorney time, as these employees would have been paid by the County regardless of whether they were working on this matter or any other matter. Last, the Court, in its discretion, declines to include the costs of employing former hospital employees.

*2. Attorneys' Fees*

The County also requests, and the Court has determined that it will receive, attorneys' fees. The question is what fees are reasonable. This Court has the discretion to determine the amount of a fee award. *Mercer v. Duke Univ.*, 30 F. Supp. 2d 454, 466 (M.D.N.C. 2004) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), abrogated on other grounds by *Tex. States*

*Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S 782 (1989)). To calculate an award of attorneys' fees, the court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[2] The party requesting fees bears the burden of establishing the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* at 244. Other facts may lead the court "to adjust the fee upward or downward . . ." *Hensley*, 461 U.S. at 434.

Plaintiff submitted a number of affidavits and, at the Court's request, extremely detailed billing information to support its request for attorneys' fees in the amount of nearly $200,000. [DE 42–2, 60, 62–63, 109–112]. Plaintiff's documentation lists eight attorneys who have worked on the case. Five are partners, whose rates range from $340 to $450 per hour, and three are associates, whose rates range from $240 to $270 per hour. Plaintiffs do not request attorneys' fees for time spent by paralegals. Defendants argue, *inter alia*, that plaintiffs cannot collect fees related to litigation on the underlying contract claims and that plaintiffs have insufficiently documented their requests for fees.

Plaintiff has included evidence that the emergency nature of this action required a high level of skill and experience from the attorneys. [DE 42–2]. The size of the litigation team is not

---

[2] Factors to consider in determining the reasonableness of the hours and rate include:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
*Hensley*, 461 U.S. at 430 n.3 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

4

unreasonable given the short timeframe within which plaintiffs had to act. In a relatively short period of time, this case required significant time and labor, as well as a large amount of litigation. Thus far—before any real consideration of the merits—the case involved emergency action to obtain a temporary restraining order, a last-minute removal to federal court, and the last minute filing of affidavits merely a day prior to the contempt hearing. Plaintiffs then had to pursue relief in federal court in the form of a motion to show cause and a hearing thereon. The reason this case required so much litigation on plaintiff's behalf at such an early stage was because of defendants' dilatory and contumacious behavior.

The Court has considered all the facts, as well as the affidavits submitted by plaintiff. The Court has more than a quarter of a century of experience as a United States District Judge regarding the customary hourly rates for counsel in the eastern North Carolina area. Therefore, the Court finds the following rates to be reasonable: (1) $350 per hour for attorneys Wilson, Forstner, Labban, Petersen, and Hewett; (2) $240 per hour for attorneys Whitley, Hedrick, and Puleo. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) ("A reasonable hourly rate is defined as the prevailing market rate in the relevant community."); *see also Rivers v. Ledford*, 666 F. Supp. 2d 603, 609 (E.D.N.C. 2009) (finding a fee of $300 per hour reasonable in North Carolina); *In re Wachovia Corporation ERISA Litigation*, No. 3:09-CV-262, 2011 WL 5037183 (W.D.N.C. 2011) (using rates of $300 per hour for partners, $225 per hour for associates); *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 595 (W.D.N.C. 2010) (using rates of $325–400 per hour for partners, and $225–280 per hour for associates in western North Carolina).

A fee applicant also must establish the reasonableness of the hours requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The Court may not simply accept as

reasonable the number of hours reported by counsel." *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1307 (E.D. Va. 1994) (quoting *Espinoza v. Hillwood Square Mutual Assoc.*, 532 F. Supp. 440, 446 (E.D. Va. 1982)). "The Court should not compensate plaintiff's counsel for hours which it finds 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434).

Plaintiffs request fees for a total of approximately 521.5 hours. After reviewing the affidavits and billing statements submitted by plaintiffs, the Court finds that this is an unreasonable number of hours. Plaintiffs request attorneys' fees for such actions as preparing the complaint, work on the underlying breach of contract suit, preparation of the motion to dismiss, and work performed prior to the filing of the temporary restraining order in state court. Such work does not relate to the actions for which defendants' are being sanctioned—namely the violation of the state court's actions and the corresponding contumacy in this Court. Rather than engaging in the painstaking process of calculating costs without the excessive hours, the Court will exercise its discretion and reduce the number of hours by 35% in order to ensure that it is only awarding attorneys' fees that will reasonably compensate plaintiffs for defendants' contempt.

Accordingly, the following is a tabulation of the fees for each attorney using the reasonable rates and hours as determined by the Court, which results in a fee award of $112,011.70.

| Name | Rate | Hours | Fee |
|---|---|---|---|
| Wilson – P | $350 | 102.7 | $35,945.00 |
| Forstner – P | $350 | 79.76 | $27,916.00 |
| Labban – P | $350 | 30.49 | $10,671.50 |
| Whitley – A | $240 | 43.4 | $10,416.00 |
| Petersen – P | $350 | 46.8 | $16,380.00 |
| Hedrick- A | $240 | 25.09 | $6,021.60 |
| Hewitt - P | $350 | 12.16 | $4,256.00 |
| Puleo – A | $240 | 1.69 | $405.60 |

The Court finds that an award of $112,011.70 in attorneys' fees is reasonable, given the extent of litigation prompted by defendants' willful violations of court orders. In crafting this remedy, the Court has carefully considered what amount will compensate plaintiff for its losses without being punitive. In arriving at an amount of $112,011.70 in attorneys' fees and $36,079.96 in costs, the Court expressly relies upon its discretion in crafting an appropriate civil contempt remedy.

## CONCLUSION

For the foregoing reasons, defendants are ORDERED TO PAY, jointly and/or severally, $36,079.96 in costs and $112,011.70 in attorneys' fees to plaintiffs as a compensatory penalty for its civil contempt relating to the violation of the temporary restraining order. The Court again reserves its ruling on criminal contempt until it is established that defendants will comply with the proceedings as they relate to civil contempt.

SO ORDERED, this __19__ day of January, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE